I'd like to reserve a few minutes for the rebuttal argument. Your Honor, the Sixth Amendment grants not only the right to counsel but the right to effective assistance of counsel. The issue before the trial court was whether the defendant was being deprived of the effective assistance of counsel under the Sixth Amendment. Although substitution of attorneys is often a matter of discretion and therefore reviewed for abuse of discretion in this case, the court does not have a full record of what happened. Mr. Plaza-Uzeta expressed his problems to the judge in a letter. I looked for the letter when I was appointed to this case. I went through the file of the prior attorney. I could not find it. I, of course, went through the docket, which was not in the docket anywhere. I asked my predecessor, Ann Williams, whether she recalled this letter. She did not recall it at all and had never seen it. Ms. Settle, I believe, when she gets up here will tell you that she never saw the letter. Therefore, the right of review is nonexistent in this case based upon the procedure followed by the trial judge. It is our position that a question of this nature, and especially with the enormous penalty that followed of life imprisonment two times, the court erred grievously by not conducting a hearing and listening to what the defendant had to say as to why his case was not presented properly. Your Honor, I will not kid you that the evidence was in favor of the government on most issues, not all issues. The defendants did not present anything. The question is why they did not present anything. Mr. Plaza-Uzzetta told the trial court in his motion for new trial that he had instructed his attorney to present the testimony of two witnesses. The attorney refused to do that. He told the trial judge in his pro se motion for new trial that he had requested the filing of two motions. The attorney did not do that. The attorney, Ms. Williams, in this case, shortly after the pleadings were ruled upon as pleadings, she stated to the trial judge that the trial judge wanted to appoint her in a standby capacity. She tried to decline. She says, and I think it's very important what she says, I do register an objection to being kept on as Mr. Plaza's advisory counsel. He and I have had some difficulties in the representations. Now, as advisory counsel, I do not feel that I could necessarily be effective or beneficial to him. Certainly, if a lawyer cannot be effective in the constitutional sense, a standby, in which you don't do very much, really, she certainly could not be effective in carrying out and presenting the defense that Mr. Plaza-Uzzetta wanted to present. Also, we point out that the trial judge shortly after this letter was received, the trial judge conducted an off-the-record conference with the attorneys for 45 minutes in his chambers, at which the defendant was not present, did not know what was being presented at that time, and I don't know what they talked about for 45 minutes, but neither does anybody else, because it wasn't on the record and the defendant was excluded. His lawyer made no effort whatsoever to get him there. If it is proper that a judge may rule on this type of request based on the pleadings, these pleadings were clearly inadequate. Ms. Williams did not state her position in her motion for appointment of new counsel. I assume Mr. Plaza said something in his letter. It's just impossible to say what he did say. Your Honor. Presumably, you could find out from him and tell us. Does he tell you what he said? Yes. I communicated with him in Spanish. One of the problems he had with his prior lawyers, she was English-speaking only. He does speak limited English, but it's limited. I did not ask him. He's in state custody at this moment. We're all dealing with a hypothetical, but somebody actually knows, and I presume it's your client. Did he ever make an effort to make a showing, to submit a declaration, to do anything to demonstrate the existence of an actual conflict with Ms. Williams? Yes. In his motion for new trial, he told the trial judge that he had requested prior to trial two witnesses. The lawyer didn't do it. He had requested two motions. The lawyer didn't do it. So although the evidence seems strong on the basic guilt of the defendant, the jury did not hear all the testimony the defendant wanted to present. That is ineffective assistance of counsel. The case that I think is the clearest and most applicable to this is the United States v. DeMoore in 1995. There, the defendant, as here, sent a letter to the trial judge. The trial judge made up his mind based upon that letter, but did conduct a hearing, which the court described as abbreviated, but there was a hearing. Here, we didn't even have an abbreviated hearing. The court made no inquiry of the defendant or the counsel as to what the problem might be. The court there ruled the procedure used here deprived this court of a record for review and the defendant of an opportunity to obtain a full explanation, exploration of his concerns about his appointed counsel. It was the court's duty to make an adequate inquiry. It sounds as if the heart of your claim here is ineffective assistance of counsel, and the court's dealing with claims about conflict with his assigned counsel at the time. Right. The question is whether he was wrongfully denied the opportunity to ask for substitute counsel. And it sounds as if there are, from your point of view, there are gaps in the record or missing items that would deprive the court of an opportunity to fully review. Absolutely. Yes, this court can't review it, and we don't know what the basis of Judge Strand's ruling was. Couldn't you get at that in federal habeas? How could we do that? Ask for discovery. Ask for an evidentiary hearing. Evidentiary. What are we going to present? The letter is nowhere to be found. We've already searched it. Ask the participants in the off-the-record hearing what occurred. Well, I suppose you could. I mean, usually this is a direct appeal. Normally, if there's a claim that sounds in ineffective assistance of counsel, and the record's not clear as to what happened and when and where, the usual response from an appellate panel is to say you have a perfect right to pursue that in a 2255. Well, but here the procedure followed was not constitutionally sufficient. It was just a decision on the pleadings, and the pleadings before the court right now are insufficient to substantiate that, and a decision on the pleadings alone is not what is required by the case law of this circuit. The case law of this circuit, if I could summarize, is number one, the first question is the adequacy of the court's inquiry. Here there was no inquiry whatsoever. The extent of the conflict between attorney-client, of course, you can't know number two without having an inquiry, which is number one. And then the timeliness or inconvenience. This was a timely motion. It was the first motion for substitute counsel filed well in advance of the trial date. There was no motion for continuance, and it's hard to see any ulterior motive in filing this motion except what the defendant says. Your Honor, I just also want to point out that when he requested pro per status, that was granted. However, the judge talked him out of it by not allowing him access to legal materials. The judge could have made a very simple accommodation so that Mr. Plowser said it could represent himself in this case, present the two witnesses, file the two motions, whatever he wanted to do. The court didn't do that. In my remaining time, I would just like to mention my last argument regarding the increase where someone is convicted of conspiracy and the so-called victims are individuals, people, as opposed to dollars or property or whatever. The guidelines call for a sentence equal or considering that he was convicted 56 times because there were 56 aliens found in the drop house, even though he's only convicted of one offense. That's just the nature of the guideline. We submit that the inquiry by the judge was inadequate on that thing, on that issue, simply because drop houses are very different from kidnappings because drop houses are essentially transit centers. The testimony of the government expert at this trial was that people come in and out of these houses all the time. The pre-sentence report reports that there were 100 aliens through this house. The number 56 is a purely arbitrary figure. It's what the officers found when they entered the house. There could have been 200 there the day before. There could be two there the next day. It's a very arbitrary figure. The case the government relies on, Saragossa, was a true kidnapping. That was Bajadores, as they call them. It's one gang which brings out their guns and steals 23 aliens from another gang, keeps the gunpoint for kidnapping purposes. That's a completely different situation from this house in which the business and the whole trial is describing the business that they're in of processing these aliens and sending them to all parts of the United States, which takes time to arrange transit. And I don't have much time, but I'd like to reserve it. Thank you. We'll give you some time. Counsel? Yes, good morning again. My name is Lisa Settle, and I represent the United States. I think that the defendant is a little confused. There's a 45-minute hearing on October 4th, and that is before a magistrate judge, and that was a settlement conference. And clearly the defendant was present for that, and they're not recorded. And at that time, the defendant didn't even have an interpreter. He said he didn't need one. So also he obviously understands English since a lot of his motions or every motion was filed in English, and it's clear he has an understanding of the English language. So I don't believe that that caused any problem between him and his attorney, and his attorney already had an interpreter present. So there was no off-the-record conference with yourself and trial defense counsel and Judge Strand? No, he says that occurred on October 4th, 2006, and again, that was a settlement conference. It's CR 80, and that's a settlement conference held before Judge Anderson. And that's the only thing that I recall happening on that day, and again, the defendant was clearly present at that time. So have you seen the letter? No. Defense counsel is correct. In fact, I don't recall what that letter was, and I don't know why I didn't maybe bring it up when I saw the court's order. Well, it's a very odd situation we find ourselves in because there's no hearing, there's no letter, although we know there is one because of the order. How are we supposed to evaluate what Judge Strand did without a record on this? Well, the order says there are no good reasons. There are no good reasons. How are we supposed to know? Because they never, ever give reasons. Well, we had the hearing on October 6th, the court, when it was the pro per hearing. The court gave defendant and defense counsel ample opportunity to present any reasons, any type of conflict, and there never was. Now, at this point, defense counsel has represented the defendant for 16 months, and there has never been any conflict. And in addition, when she filed that first motion on his behalf, she said that, and I quote, and this is in the ER on page 5, Mr. Plaza-Zitra made this request when counsel met with him at CCA. Mr. Plaza did not share with counsel the reason for his request. So clearly, his own counsel, who had represented him for 16 months, had no idea what the conflict was. There was never a conflict communicated to the court. Therefore, the court did not abuse its discretion when it declined to give defendant new counsel. As for the hearing on October 6th, the Feretta hearing, there's been no challenge to it, and it was clear that it covered all the points necessary in order to let the defendant decide if he wanted to represent himself. And at the end of that hearing, he said, or in the middle of the hearing, he said he wanted to represent himself, and then after further discussion, he decided against it, and he decided that he would continue with his counsel, and he proceeded to trial. And it was only 15 days between that October 6th hearing, then there was a trial that he filed his next motion to proceed pro per. Therefore, when he had that next hearing before the court, the second one, post-trial, he was aware of what his rights were when he decided to go forward and to represent himself. He also was given, the court gave him and his counsel both opportunity to ask any additional questions or raise any additional concerns, and they declined it. As for sentencing, the defense counsel is mistaken when he says that a true kidnapping only occurs when you steal aliens from another smuggler. In fact, at his opening brief on page 37, he says that harboring only turns into hostage-taking when a demand for money is made, and he cites United States versus Sierra Velazquez. And that's not true. What this court stated in that case was that a ransom enhancement under the sentencing guidelines is only appropriate when, or not only, or is appropriate when a demand for money is made. There is no requirement for us to show, for the United States to show, that a demand for money was made for all 56 people found in that house. It was merely to, we merely need to show what you have to show for the elements of hostage-taking, that people were seized or detained against their will. And when the agreement for harboring is no longer valid, when people are burned and held at gunpoint and extorted and strip-searched and beaten and threatened with death, then you have a hostage-taking. And there was... We know that all 56 were hostages. Well, we don't need 56 in order to get the five-level increase. You only need six. And three testified at trial. In the pre-sentence report at paragraph 6, the pre-sentence report writer talks about 10 victims that were interviewed and what their experience was in the house. But of the three witnesses who testified, they said everybody was being beaten from the minute they got there until the minute the police came. They discussed, Abraham Farfan discussed how he was with two friends, and after he escaped, he told the police and he told the jury that his two friends were being held hostage there. He also described how a man had a bag put over his head, how other people were being beaten. So there's clearly enough evidence to determine that this was a violent house and that everyone was being treated the same way. Not only that, the co-conspirators themselves said in their plea agreements that people were being held hostage. And we cited Fabian Franco's plea agreement in a separate case, how he said over 100 people passed through that house and that they were all being held hostage at the house. So you don't need 56. You only need six. But there was, by preponderance of the evidence, enough evidence for the district court to determine that the additional five levels under 1B1.2d was appropriate. As for role enhancement, that also was appropriate. Not only did testimony from the witnesses determine that the defendant was a leader, but all of his co-defendants that pled in this matter also said in their plea agreements that he had a leadership role, him and his co-defendant Medina. Also, when his co-defendant was arrested, he said that Rubin, his co-defendant Rubin, the defendant in this case, was the leader and had people at that house and had people at other houses too. And not only that, there was testimony trial of the expert at the end of a smuggling list. It said three costs to Malandra, and the expert testified that three aliens belonged to Malandra and the defendant admitted that that was his nickname, Malandra. All that was not only presented at trial, but also was evidence that the court considered when sentencing the defendants. As such, the district court had the discretion, knew it had the discretion, to properly give the defendant the enhancements for number of victims and for role enhancement, and it did, and therefore the defendant's conviction and life sentence should be affirmed. Thank you very much. Thank you, counsel. Rebuttal, Mr. Baggett. Your Honor, the defendants received a life term because they were sentenced as if they had been convicted of 56 separate offenses. That's where the five levels comes in. That escalates a sentence from 20 to 30 years to life, which in effect adds probably 60, 80, however long he's going to live, years to his sentence. That is the crucial distinction. Even though these were not very nice guys and the circumstances were not terrific, it was not the Hilton Hotel, we understand that, but the conditions where they came from, Guatemala, Salvador, Latin America, Mexico even, are not very nice either. And people walk three days during the deserts and do all these incredible things simply because they want to get to their destination. Just because they were roughed up and ripped off doesn't mean they didn't want to be there. There has to be a determination that they're really victims as opposed to being there consensually but being mistreated. Regarding Ms. Settle's statement regarding the pretrial conference, I'll read you the minute order. This is the time set for pretrial conference. A conference is held in chambers, comma, off the record. The defendants are not present in chambers. Status of the case is discussed. Pending motion to sever is argued. Motion to sever denied. The government will sanitize any party statements pursuant to Bruton. They talk about the list of witnesses. The defendant, had he been there, of course, would have said, gee, Judge, I hope he would have said, gee, Judge, I want to call two witnesses and my lawyer won't do it. He didn't even have that opportunity. So I was not confused. Thank you. Thank both counsel for their arguments. The case just argued will be submitted for decision, and the Court will stand in recess for the day.
judges: Hawkins, Thomas, Clifton